IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON WOOD AND ROGER BARROWS, on behalf of themselves and all others similarly situated, | Case No. 3:16-CV-0534 (GLS/DEP) |
| Plaintiffs, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| DOLLAR GENERAL CORPORATION, a Tennessee corporation; and DOLGENCORP, L.L.C., a Kentucky Limited Liability Company, | |
| Defendants. | |

Plaintiffs Jason Wood and Roger Barrows ("Plaintiffs"), on behalf of themselves and all others similarly situated, allege on their personal knowledge as to themselves and, otherwise, upon information and belief based on investigation of counsel, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.     Plaintiffs, by and through undersigned counsel, bring this action on their own behalves and on behalf of the class and sub-class defined below, comprised of all individuals similarly situated to redress the unlawful and deceptive practices employed by Defendants Dollar General Corporation, a Tennessee corporation, and Dolgencorp, L.L.C., a Kentucky limited liability company doing business in New York (hereinafter "Defendants") in connection with their marketing and sale of their company-branded motor oil sold in its stores.

2.     Using deceptive and misleading tactics, Defendants sell a company-branded line of motor oils (labeled "DG Auto") that are obsolete and potentially harmful to automotive engines by Defendants' deceptive and misleading tactics including positioning its line of obsolete motor oils immediately adjacent to the more expensive standard- and premium-quality motor oils manufactured by its competitors and failing

adequately to warn its customers that its DG Auto motor oil is unsuitable for use by the vast majority, if any, of its customers.

3.     Plaintiffs seek, on behalf of themselves and all others similarly situated, relief for Defendants' violation of the New York General Business Law § 349 ("GBL 349"), and the contractual rights of consumers arising from these unlawful and deceptive practices.  Plaintiffs also seek, on behalf of themselves and all others similarly situated, disgorgement of Defendants' profits from its obsolete DG Auto motor oil, by which Defendants have been unjustly enriched.

## JURISDICTION AND VENUE

4.     Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), because members of the proposed Class are citizens of States different from Defendants' home states of Tennessee and Kentucky, there are more than 100 Class Members, and the amount in controversy exceeds $5,000,000 exclusive of interest and costs.

5.     This Court has jurisdiction over Defendants because Defendants are foreign corporations or associations authorized to do business in New York, do sufficient business in New York, and have sufficient minimum contacts with New York or otherwise intentionally avail themselves of the laws and markets of New York, through the promotion, sale, marketing and distribution of its merchandise in New York, to render the exercise of jurisdiction by the New York courts permissible.

6.     Venue is proper in this District under 28 U.S.C. §139l(b) and (c) because Defendants' improper conduct alleged in this complaint occurred in, was directed from, and/or emanated from this judicial district, because Defendants have caused harm to Class Members residing in this district, and/or because the Defendants are subject to personal jurisdiction in this district.

7.     In addition, Defendants operate numerous stores in New York and have

received substantial compensation from New York consumers who purchase goods from Defendants.

PARTIES

8.     Plaintiff Jason Wood is an individual adult resident citizen of Norwich, Chenango County, New York and is a member of the Class and Sub-Class alleged herein.

9.     Plaintiff Roger Barrows is an individual adult resident citizen of Oxford, Chenango County, New York and is a member of the Class and Sub-Class alleged herein.

10.     Defendant Dollar General Corporation is incorporated under the laws of the State of Tennessee, with its corporate headquarters located at 100 Mission Ridge, Goodlettsville, Tennessee.

11.     Defendant Dolgencorp L.L.C. is a Kentucky limited liability company with its headquarters located at 100 Mission Ridge, Goodlettsville, Tennessee.

12.     At all relevant times, Defendants produced, marketed, distributed and sold its obsolete DG Auto motor oil in its stores throughout the United States, including in the State of New York, utilizing deceptive and misleading marketing and sales practices to induce Plaintiffs and Class Members into purchasing its obsolete motor oil for use in their modern-day vehicles knowing that its motor oil is obsolete and likely to cause damage to any such vehicle.

FACTUAL ALLEGATIONS

**Defendants' Dollar General Stores**

13.     Defendants operate a chain of variety stores under the name "Dollar General Stores" ("Dollar General").   Dollar General is a discount retailer focused on low- and fixed-income consumers in small markets. Defendants' business model includes locating its Dollar General stores in rural and suburban communities. In its more densely populated markets, Dollar General's customers are generally from the neighborhoods immediately surrounding the stores.   Defendants' stores are located and stocked with the needs of its core customers (low- and fixed-income households) in mind.

3

14.     Dollar General offers basic every day and household goods, along with a variety of general merchandise at low prices to provide its customers with one-stop shopping opportunities generally in their own neighborhoods.

15.     In addition to offering name brand and generic merchandise at their Dollar General stores, Defendants manufacture and market their own lines of inexpensive household products, which bear the designation "DG." DG lines include "DG Auto," "DG Hardware" "DG Health" and "DG Office." Defendants' "DG Auto" line includes the motor oils that are the subject of this lawsuit.

**Defendants' Motor Oils**

16.     Motor oils lubricate the engines of the automobiles and trucks. Their main function is to reduce wear on an automotive engine's moving parts. Motor oils also inhibit corrosion, improve sealing and keep engines properly cooled.

17.     Motor oils have evolved in parallel with the vehicles they are meant to protect. Institutions like the Society of Automotive Engineers ("SAE") employ rigorous tests to ensure that motor oils meet evolving standards relating to, among other criteria, sludge buildup, temperature volatility, resistance to rust, resistance to foaming, resistance to oil consumption, homogeneity and miscibility.

18.     The SAE has established a numerical code system for grading motor oils according to their viscosity characteristics. SAE viscosity gradings include the following, from low to high viscosity: 0, 5, 10, 15, 20, 25, 30, 40, 50 or 60. The numbers 0, 5, 10, 15 and 25 are suffixed with the letter W, designating they are "winter" or cold-start viscosity, at lower temperature. Some motor oils are multi-grade, meaning that they have one viscosity at low temperatures, and a different viscosity when hot. This allows a single motor oil to be used all year round. A motor oil labelled "10W-30" has a viscosity rating of 10 at low temperatures and viscosity rating of 30 at higher temperatures.

19.     Motor oils designed to protect engines from earlier eras do not protect, and

can harm, modern-day engines. Thus, motor oil that would be suitable to use in an engine manufactured in the 1980's or earlier is not suitable for use in modern-day engines.

20.     Defendants' DG Auto line includes three types of motor oil: DG Auto SAE 10W-30 motor oil, DG Auto SAE 10W-40 motor oil, and DG Auto SAE 30 motor oil. All of these are obsolete and fail to protect and can actively damage, modern-day automobile engine.

21.     Defendants engage in the unfair, unlawful, deceptive and fraudulent practice of marketing, selling and causing to be manufactured, obsolete motor oil without adequately warning that this product is unsuitable for, and can harm, the vehicles driven by the overwhelming majority of Dollar General's customers (and the public at large).

22.     Defendants mislead Dollar General's customers by using misleading product placement tactics and misleading product labels to obscure the critical fact that DG Auto motor oil is unfit for, and can harm, the vehicles driven by the vast majority, if not all, of Dollar General's customers.

23.     Dollar General places its DG Auto motor oil adjacent to the other brands of motor oil that Dollar General sells, such as PEAK, Pennzoil, and Castrol; these other brands are non-obsolete motor oils that, unlike DG Auto motor oil, are meant to be used in modern automotive engines.  All of the motor oils sold by Dollar General, including the DG Auto motor oil, use the standard SAE viscosity nomenclature on the front, e.g., 10W-40. The only apparent difference is the price, as DG Auto motor oils are less expensive than the others.  Defendants' placement of their DG Auto motor oils with these other brands of motor oil suggests that DG Auto motor oil is simply another (and less expensive) variety of the same product as the other brands displayed.

24.     In addition, the quantities of the DG Auto motor oils, DG SAE 10W-30 motor oil, DG SAE 10W-40 motor oil, and DG SAE 30 motor oil, on display are similar to the quantities displayed of other brands of motor oil that are suitable for modern day

vehicles, suggesting that, like those other brands, DG Auto motor oils have widespread use and that legitimate demand for the product is similar in volume to demand for the other motor oils on display. Dollar General's placement of the DG Auto motor oils on the same shelves and in similar quantities as the other motor oils suggests that the products are the same, and conceals the fact that the DG Auto motor oils have an extremely obscure and limited use, that the product is a specialty product suitable for a tiny number of automotive engines on the road, and that these motor oils are likely to cause damage to the engines of most of Dollar General's customer's cars. Defendants' product positioning of their DG Auto motor oils are likely to deceive reasonable consumers.

25.    Defendants also deceive consumers with the labels on their DG Auto motor oils. The front label of Defendants' DG Auto motor oils use the same or similar SAE nomenclature (e.g., 10W-30, 10W-40, SAE 30) found on the other brands of non-obsolete motor oil sold by Dollar General and beside which Dollar General places its DG-brand motor oil on its shelves. Defendants' DG Auto motor oils bear the designation "DG Auto" and are prominently labelled "Motor Oil" on the front of the container.  The front label of Defendants' DG Auto SAE 10W-30 and DG Auto SAE 10W-40 motor oils specifically states: "Lubricates and protects your engine." A reasonable consumer would believe and expect that these products are suitable for use in automotive engines in cars actually in use on the date of sale and that these products will lubricate and protect such engines.

26.    Only in small print on the back label of Defendants' DG Auto SAE 10W-30 and DG Auto SAE 10W-40 motor oils can be found the statement that these products are "not suitable for use in most gasoline powered automotive engines built after 1988" and "may not provide adequate protection against the build-up of engine sludge." Similarly, the statement that Defendants' DG Auto SAE 30 motor oil is "not suitable for use in most gasoline powered automotive engines built after 1930," and that its "use in modern

engines may cause unsatisfactory engine performance or equipment harm" appears only in small print on the back of the DG Auto SAE 30 motor oil container.

27.     Dollar General conceals this language by rendering it in small font and confining it to the products' back label.

28.     Dollar General further conceals this language by placing it below a message that presents a misleading impression of the product. For the DG SAE 10W-30 and DG SAE 10W-40 products, that message reads, "SAE 10W-30 motor oil is an all-season, multi-viscosity, heavy duty detergent motor oil recommended for gasoline engines in older model cars and trucks. This oil provides oxidation stability, anti-wear performance, and protection against deposits, rust and corrosion." For DG Auto SAE 30 motor oil, that message reads: "DG Quality SAE 30 is a non-detergent motor oil designed for use in older engines where consumption may be high and economical lubricants are preferred."

29.     DG Auto motor oils are not suitable for most use in most vehicles currently in use at the time the products are sold.  Few, if any, of Dollar General's customers drive vehicles for which these products are safe, and the use of the term "older" is a relative term that does not inform a reasonable consumer that these motor oils are not safe for cars manufactured within the past 27 years, or in the case DG Auto SAE 30 motor oil, the past 85 years.

30.     Defendants also fail to warn its customers adequately of the obsolete nature of DG Auto motor oils or of the dangers DG Auto motor oils pose to the very automobiles its customers are trying to protect by purchasing DG Auto motor oil. An adequate warning for Defendants' obsolete motor oils would be displayed conspicuously and would inform Dollar General's customers of the appropriate uses, if any, of the various types of DG-brand motor oils. However, Defendants provide their customers with no such conspicuous warnings. Instead, they bury the aforementioned statements on the back of their products in small type where customers are unlikely to encounter them.

7

31.     Defendants' entire line of low-cost motor oil is unsuitable for the modern-day vehicles driven by their customers and would only be purchased as a specialty product for use in the extremely small number of vehicles for which they are suitable, except that Defendants successfully deceive a sufficient number of customers to make this fraudulent practice worthwhile.

32.     It is unfair, unlawful, deceptive, and fraudulent for Defendants to distribute, market, and sell an entire line of motor oil that is unfit for, and presents concrete dangers to, the vast majority of vehicles driven by their customers.

33.     Defendants knew or should have known that their customers are being, or will, in reasonable probability be, deceived by their marketing tactics described above.

34.     New York's GBL § 349 is designed to protect consumers from this type of false, deceptive, misleading and predatory unconscionable conduct.

35.     Defendants' unfair and deceptive course of conduct victimized all purchasers of DG Auto motor oil from Dollar General, throughout the country and in the State of New York.

36.     As a direct and proximate result of Defendants' deceptive and fraudulent practices, Jason Wood, Roger Barrows and the Class Members purchased a product they would not have otherwise purchased and have suffered and will continue to suffer economic damages.

37.     In addition, many Class Members have sustained damage to their automobiles as a result of the use of Dollar General's DG Auto motor oil and have suffered and will continue to suffer economic damage as a result.

38.     Defendants knew or should have known that consumers' payments for their obsolete and harmful motor oil were given and received with the expectation that the motor oil would lubricate and protect consumers' engines and would not be harmful to their vehicles.

39.     Because of the fraudulent misrepresentations, concealments, and other wrongful activities described herein, Defendants have been unjustly enriched by its wrongful receipt of Plaintiffs' and Class Members' monies.

40.     Plaintiffs and Class Members have conferred substantial benefits on the Defendants by purchasing their useless and harmful motor oil, and Defendants have consciously and willingly accepted and enjoyed these benefits.

**Plaintiffs' Purchases of DG Auto Motor Oil**

41.     Plaintiff Jason Wood purchased approximately 50 quarts of Dollar General's DG Auto SAE 10W-30 motor oil from the Dollar General store at 5640 State Highway 12, in Norwich, New York for the past 2 ½ years, paying approximately One Hundred Thirty Seven Dollars and Fifty Cents ($137.50).  Plaintiff used the oil in his 2008 Chevy Colorado until the vehicle's engine "seized up" in 2014. At the time the vehicle's book value was Eleven Thousand Seven Hundred Ninety-Eight Dollars ($11,798) and it was sold for junk at Seven Hundred fifty Dollars ($750.00).

42.     Plaintiff Roger Barrows purchased approximately 25 quarts of Dollar General's DG Auto SAE 10W-30 motor oil from both the Dollar General store at 5640 State Highway 12, in Norwich, New York and from the Dollar General Store at 1 North Washington Avenue in Oxford, New York for the past 3 years, paying approximately Sixty Eight Dollars and Seventy Five Cents ($68.75).  Plaintiff used the oil in his personal vehicle, a 2007 Dodge Ram and in tractors and other farm equipment.

43.     Plaintiffs bring the statutory and common law claims alleged herein to halt Defendants' deceptive practices and to obtain compensation for the losses suffered by Plaintiffs and the members of the Class.

## CLASS ACTION ALLEGATIONS

44.     Plaintiffs bring this class action pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all members of the following Class and Sub-Class:

**The Nationwide Class (the "Class"):**

All persons in the United States who, at any time since May 2013, purchased DG Auto SAE 10W-30 motor oil, DG Auto SAE 10W-40 motor oil and/or DG Auto SAE 30 motor oil, for use in vehicles manufactured after 1988.

**The New York Sub-Class (the "Sub-Class"):**

All persons in the State of New York who purchased DG Auto SAE 10W-30 motor oil, DG Auto SAE 10W-40 motor oil and/or DG Auto SAE 30 motor oil, for use in vehicles manufactured after 1988.

Specifically excluded from the proposed Class and Sub-Class are Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or its officers and/or directors, or any of them. Also excluded from the proposed Class and Sub-Class are the Court, the Court's immediate family and Court staff

45.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class and Sub-Class may be expanded, narrowed, or otherwise amended.

46.     This action has been brought and may be properly maintained on behalf of the class and the subclass proposed herein under Federal Rule of Civil Procedure 23.  The requirements of Rule 23(a), Rule 23(b)(2) and Rule 23(B)(3) are all satisfied.

47.     The members of the Class and Sub-Class are ascertainable through the use of objective criteria.

48.     The members of the Class and Sub-Class are so numerous that separate joinder of each member is impracticable. The precise numbers of members of the Class and Sub-Class are unknown at this time but can be readily determined from Defendants' records. Plaintiffs reasonably estimate that there are tens of thousands of persons in the Class.

49.     Plaintiffs will fairly and adequately represent and protect the interests of

the members of the Class and the Sub-Class. Plaintiffs have retained counsel highly experienced in complex consumer class action litigation and intends to prosecute this action vigorously. Plaintiffs are members of the Class and the Sub-Class described herein and do not have interests antagonistic to, or in conflict with, the other members of the Class or Sub-Class.

50.     Plaintiffs' claims are typical of the claims of the members of the Class and Sub-Class. Plaintiffs and all members of the Class and Sub-Class purchased obsolete, harmful, deceptively labeled and deceptively marketed motor oil from Dollar General and were subjected to Defendants' common course of conduct.

51.     There are numerous and substantial questions of law and fact common to all members of the Class and Sub-Class sufficient to satisfy Rule 23(a). These common questions predominate over any individual issues for purposes of Rule 23(b)(3).  These common questions include:

> a.   Whether Defendants misrepresented the safety and suitability of their DG Auto motor oil;
>
> b.   Whether Defendants failed adequately to disclose that DG Auto 10W-30 and 10W-40 motor oil were not suitable for use in automotive engines manufactured after 1988;
>
> c.   Whether Defendants failed adequately to disclose that DG Auto SAE 30 motor oil was not suitable for use in automotive engines manufactured after 1930;
>
> d.   Whether the warnings provided on the labels of DG Auto motor oil were adequate;
>
> e.   Whether the use of term "Motor Oil" in large letters on the front of Defendants' DG Auto oil, along with the brand "DG Auto" and the use of standard SAE viscosity designations, was likely to, and did, deceive

consumers and lead them to believe that the DG Auto oils were suitable for use in ordinary automotive engines;

f.  Whether the small print statements on the back labels of Defendants' DG Auto motor oils were sufficient to alert consumers to the true nature of the products;

g.  Whether Defendants' placement of DG Auto motor oil next to, and in similar quantities to, motor oils that are suitable for use in modern automotive engines is likely to, and did, deceive reasonable consumers;

h.  Whether Defendants deliberately misrepresented or failed to disclose material facts to Plaintiffs and the members of the Class regarding the obsolete and harmful nature of their DG Auto motor oil;

i.  Whether Defendants' conduct, as alleged herein, constitutes an unconscionable act or practice actionable under New York's GBL 349;

j.  Whether Defendants were unjustly enriched by their sales of DG Auto motor oil;

k.  What profits Defendants earned on sales of their DG Auto motor oil;

l.  Whether the Class is entitled to injunctive relief prohibiting the wrongful practices alleged herein and enjoining such practices in the future;

m.  Whether Plaintiffs and members of the Class are entitled to restitution;

n.  Whether compensatory, consequential and punitive damages ought to be awarded to Plaintiffs and the members of the Class;

o.  Whether Plaintiffs and the members of the Class are entitled to attorneys' fees and expenses, and in what amount; and

p.  The proper method for calculating damages and restitution class-wide.

52.   The Class is suitable for certification under Rule 23(b)(2).  Defendants have acted on grounds generally applicable to the entire Class, thereby making final injunctive

12

relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual members of the Class and Sub-Class would create the risk of inconsistent or varying adjudications with respect to individual member of the Class that would establish incompatible standards of conduct for Defendants.

53.     Injunctive relief is necessary to prevent further fraudulent and unfair business practices by Defendants. Money damages alone will not afford adequate and complete relief, and injunctive relief is necessary to restrain Defendants from continuing to commit its deceptive, fraudulent and unfair policies.

54.     The Class is also suitable for certification under Rule 23(b)(3).  As described above, the common questions predominate over any individual questions that may arise.

55.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

    a.  Given the size of the claims of individual members of the Class, as well as the resources of the Defendants, few members of the Class, if any, could afford to seek legal redress individually for the wrongs alleged herein;

    b.  This action will permit an orderly and expeditious administration of the claims of the members of the Class, will foster economies of time, effort and expense and will ensure uniformity of decisions;

    c.  Any interest of the members of the Class in individually controlling the prosecution of separate actions is not practical, creates the potential for inconsistent or contradictory judgments  and would create a burden on the court system; and

    d.  Without a class action, Plaintiffs and the members of the Class will continue to suffer damages, Defendants' violations of law will proceed without remedy, and Defendants will continue to reap and retain the substantial

proceeds de1ived from its wrongful and unlawful conduct. Plaintiffs and the members of the Class have suffered damages as a result of Defendants' unlawful and unfair conduct. This action presents no difficulties that will impede its management by the Court as a class action.

CLAIMS FOR RELIEF

FIRST CLAIM FOR RELIEF

**Unjust Enrichment**

(On behalf of the Nationwide Class)

56.     Plaintiffs repeat, re-allege and incorporate by this reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

57.     Plaintiffs and the members of the Class have conferred substantial benefits on the Defendants by purchasing obsolete and harmful DG Auto motor oil.  These benefits were obtained under false pretenses because Defendants concealed, misrepresented, and failed to disclose that their DG Auto motor oils were not suitable for use in any vehicle for which consumers were likely to purchase it.

58.     No reasonable consumer would have purchased DG Auto SAE 10W-30 or SAE 10W-40 motor oil for use in an automotive engine manufactured after 1988, had Defendants not misled them into believing these products were suitable for use in such engines.

59.     No reasonable consumer would have purchased DG Auto SAE 30 motor oil for use in an automotive engine manufactured after 1930, had Defendants not misled them into believing the product was suitable for use in such engines.

60.     Defendants induced Plaintiffs and the members of the Class to purchase obsolete DG Auto motor oil not suitable for the ordinary purpose for which motor oil is sold by misleadingly placing DG Auto motor oils on the same shelves with motor oils suitable for use in modern-day automotive engines, and by displaying DG Auto motor oils in quantities similar to the quantities of the other motor oils on the shelves.

61.     The legitimate market for DG Auto motor oils, if any, is extremely small and specialized, and does not warrant the placement of the product with other motor oils, nor the quantities on display in Defendants' Dollar General stores.

62.     Defendants induced Plaintiffs and the members of the Class to purchase obsolete DG Auto motor oil not suitable for the ordinary purpose for which motor oil is sold by branding the oil "DG Auto," by labelling the oil as "Motor Oil," by placing on the front of the container the statement that the product "[l]ubricates and protects your engine," by relegating to the fine print on the back of the container the admission that the product was not suitable for modern-day automotive engines, and by placing even that statement in the context of other statements designed to lull consumers into believing the oils were suitable for use in all but the newest automotive engines .

63.     Defendants have consciously and willingly accepted and enjoyed the benefits conferred by Plaintiffs and the members of the Class.

64.     Defendants knew or should have known that consumers' payments for their obsolete and harmful motor oil were given and received with the expectation that the motor oil would lubricate and protect consumers' engines and would not be harmful to their vehicles.

65.     Defendants earned and continue to earn profits on their sales of DG Auto motor oils. Such profits are in excess of the profits Defendants earn through sales of other brands of motor oil at Dollar General stores.

66.     Through their deceptive and misleading conduct as described herein, Defendants have been unjustly enriched at the expense of Plaintiffs and the members of the Class who unwittingly purchased DG Auto motor oils, such that it would be unconscionable for Defendants to retain the benefits reaped from their deceptive conduct.

67.     By reason of the foregoing, Defendants should be required to account for and disgorge all monies, profits and gains which they have obtained or will unjustly

obtain in the future at the expense of Plaintiffs and the members of the Class.

SECOND CLAIM FOR RELIEF

**Violation of the New York Deceptive Sales Practices Act, N.Y. Gen. Bus. § 349**

(On behalf of the New York Sub-Class)

68.     Plaintiffs repeat, re-allege and incorporate by this reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

69.     New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or . . . in this state."

70.     Defendants willfully or knowingly engaged in deceptive and misleading representations and omissions aimed at causing reasonable consumers and the public in the State of New York to be deceived about the suitability of DG Auto motor oils for use in automotive engines in cars currently in use on the road. Defendants' conduct described herein constitutes deceptive acts or practices in the conduct of business, trade or commerce.

71.     Defendants' unlawful conduct was consumer-oriented in that it was designed to, had the capacity to, and did, deceive consumers and affect consumer purchase decisions in the State of New York.

72.     Defendants' conduct described herein affected the public interest, and in particular, the public interest in New York State, because that conduct perpetrated a fraud on consumers in New York.

73.     As a direct and proximate cause of Defendants' deception in the State of New York, Plaintiffs Wood and Barrows, and the members of the New York Sub-Class have been injured by the violation of § 349 described herein. This injury is separate from, and not derivative of, the injury to any other person or entity that may have resulted from Defendants' conduct. The injury suffered by Plaintiffs Wood and Barrows and the members of the New York Sub-Class includes, without limitation:  the cost of the useless DG Auto motor oil, and economic injuries flowing from damage to automotive engines

16

caused by DG motor oil and/or by the use of DG Auto motor oil instead of a motor oil that would actually lubricate and protect a car's engine.

74.     By reason of the foregoing, Defendants are liable to each of Plaintiffs Wood and Barrows and each member of New York Sub-Class for actual damages suffered by that class member resulting from the above-described violation of New York General Business Law § 349, or, if any class member's damages are less than $50, then $50 for each such class member, trebling of those damages, and reasonable attorneys' fees.

75.     Plaintiffs and the members of the Sub-Class, as well as the consuming public of the State of New York, will suffer irreparable injury if Defendants are permitted to continue the deceptive practices described herein.

76.     By reason of the foregoing, Plaintiffs and the members of the Sub-Class are entitled to injunctive relief pursuant to GBL § 349, enjoining Defendants from (1) selling obsolete oil; (2) expressly or impliedly representing to current and potential purchasers of the DG Auto motor oils that the product is suitable for use in modern day vehicles manufactured after 1988, or in the case of DG Auto SAE 30 motor oil, after 1930; (3) providing inadequate warnings as to the harm the oil can cause. Plaintiffs and the members of the Sub-Class are also entitled to injunctive relief in the form of corrective advertising requiring Defendant to disseminate truthful, adequate disclosures and warnings about the actual uses (to the extent there are any) of the DG Auto motor oils.

THIRD CLAIM FOR RELIEF

**Breach of Implied Warranty of Merchantability**

**(On behalf of the New York Sub-Class)**

77.     Plaintiffs repeat, re-allege and incorporate by this reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

78.     Beginning at an exact date unknown to Plaintiffs, but since at least three years prior to the filing date of this action, and as set forth above, Defendants represented to consumers, including Named Plaintiffs and Class Members, by labeling/packaging

17

and other means, that DG Auto SAE 10W-30 motor oil, DG Auto SAE l0W-40 motor oil, and DG Auto SAE 30 motor oil are safe and suitable for use in the automobiles driven by Dollar General's customers. Plaintiffs and the members of the Sub-Class bought those goods from the Defendants.

79.    Defendants were merchants with respect to goods of the kind, which were sold to Plaintiffs and the members of the Sub-Class, and there was in the sale to Plaintiffs and the members of the Sub-Class an implied warranty that those goods were merchantable.

80.    Defendants breached the warranty implied in the contract for the sale of goods in that their DG Auto motor oil is in fact not suitable for use in the vehicles driven by the vast majority, if any, of Dollar General's customers, as set forth in greater detail above.

81.    As a result thereof Plaintiffs and the members of the Sub-Class did not receive goods as impliedly warranted by Defendants to be merchantable and did not receive the benefit of the bargain when they purchased DG Auto motor oils.

82.    By reason of the foregoing, Defendants are liable to Plaintiffs and the members of the Sub-Class for damages for breach of warranty in an amount to be determined at trial, computed as the difference between the value the motor oil would have had if it had been as warranted and the true value of the motor oil at the time of purchase, which was zero.

FOURTH CLAIM FOR RELIEF

**Breach of Implied Warranty of Fitness for a Particular Purpose**
**(On behalf of the New York Sub-Class)**

83.    Plaintiffs repeat, re-allege and incorporate by this reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

84.    Beginning at an exact date unknown to Plaintiffs, but since at least three years prior to the filing date of this action, and as set forth above, Defendants represented

18

to consumers, including Plaintiffs and the members of the Sub-Class, by labeling/packaging and other means, that DG Auto SAE 10W-30 motor oil, DG Auto SAE l0W-40 motor oil, and DG Auto SAE 30 motor oil are safe and suitable for use in the automobiles currently in use at the time of the products were sold. Plaintiffs and the members of the Sub-Class bought those goods from the Defendants.

85.     Defendants were merchants with respect to the DG Auto motor oil that was sold to Plaintiffs and the members of the Sub-Class, and with respect to other goods of that kind.

86.     There was in the sale of DG Auto motor oil to Plaintiffs and the members of the Sub-Class an implied warranty that those goods were fit for the particular purpose of lubricating and protecting engines in automobiles currently in use at the time the product was sold.

87.     Defendants breached the warranty implied in the contract for the sale of goods in that their DG Auto motor oil is in fact not suitable for use in the vehicles driven by the vast majority of automobiles currently in use, as set forth in greater detail above.

88.     As a result thereof Plaintiffs and the members of the Sub-Class did not receive goods as impliedly warranted by Defendants to be fit for its particular purpose and did not receive the benefit of the bargain when they purchased DG Auto motor oils.

89.     By reason of the foregoing, Defendants are liable to Plaintiffs and the members of the Sub-Class for damages for breach of warranty in an amount to be determined at trial, computed as the difference between the value the motor oil would have had if it had been as warranted and the true value of the motor oil at the time of purchase, which was zero.

## DEMAND/PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and members of the Class defined herein, pray for judgment and relief as follows:

A. Certifying that this action may be maintained as a class action on behalf of the Class and the Sub-Class, appointing Plaintiffs as the class representatives, and appointing undersigned counsel as class counsel;

B. Requiring Defendants to disgorge all amounts by which they have been unjustly enriched through the conduct described herein;

C. Awarding Plaintiffs and the members of the Class full restitution of all amounts paid to Defendants for purchases of DG Auto motor oil;

D. Declaring Defendants' practices as described here in unlawful and enjoining Defendants from engaging in the unfair and/or deceptive acts or practices, as set forth in this Complaint, and requiring Defendants to disseminate corrective advertising;

E. Awarding compensatory and/or statutory economic damages;

F. Awarding punitive Damages and/or additional damages allowed under the laws of New York;

G. Granting other extraordinary equitable and/or injunctive relief as permitted by law, including specific performance, reformation and imposition of a constructive trust;

**H.** Awarding prejudgment and post-judgment interest at the prevailing legal rate, along with attorneys' fees and costs of suit; and

I. Awarding such other and further relief as the Court may deem necessary and appropriate.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs, on behalf of themselves and the members of the Class and Sub-Class, hereby demand trial by jury on all issues so triable.

Dated:  May 9, 2016

Respectfully submitted,
SIMMONS HANLY CONROY

By:  */s/ Mitchell M. Breit*
Mitchell M. Breit
mbreit@simmonsfirm.com
112 Madison Ave., 7th floor
New York, New York 10016
Phone:  (212) 784-6400